IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL ALLAN MCNEIL | : | |
| Appellant | : | |
| v. | : | Case No. 1:12-cv-03706-WDQ |
| V. PETER MARKUSKI, JR. | : | |
| Appellee | : | |

_____

BRIEF OF APPELLEE

_____

JEFFREY W. BERNSTEIN, Esquire
Goozman, Bernstein & Markuski
9101 Cherry Lane, Suite 207
Laurel, Maryland  20708

Attorney for Appellee

# **TABLE OF CONTENTS**

I. STATEMENT OF ISSUES & STANDARD OF REVIEW ……………………. 1

II. STATEMENT OF THE CASE…………………………………………………. 2

III. ARGUMENT……………………………………………………………………. 4

    A. McNeil's Failure to File an Adversary Proceeding was Harmless Error……………………………………………………………….. 4

    B. Markuski's Claim was a Priority Domestic Support Obligation………... 8

IV. SUMMARY……………………………………………………………………... 13

Appendix I (Notice of Appeal)

Appendix II (Text of Statutes & Rules)

# **TABLE OF CASES/STATUTES**

*Beaupied v. Chang*, 163 F.3d 1138, 140 (9th Cir., 1998)……………………………….  9

*Dvorak v. Dvorak*, 986 F.2d 940 (5th Cir., 1993)………..……………………….  10

*Hamlet v. Ocwen Federal Bank*, 286 B.R. 835, 838 (Bankr. W.D. Va., 2002)………..  4

*Holtz v. Poe*, 118 B.R. 809, 812 (Bankr. N.D., Okl., 1990)……………………………  9, 10

*In Re: Bunes* (Bankr. W.D. MO., 2009)………………………………………………….  11

*In Re:* Dides, 2006 WL 4667126 (Bankr. D. Md., 2006)…………………………………  5

*In Re: E-Z Serve Convenience Store*, 318 B.R. 631 (Bankr. M.D. NC, 2004)………….  4

*In Re: Jones*, 9 F.3d 878, 880 (C.A. 10, 1993)………………………………………………  9

*In Re: Kassicieh*, 425 B.R. 467 (D.D. OH., 2010)……………………………………………  11

*In Re: Kmart Corp.*, 290 B.R. 601 (Bankr. N.D. Ill., 2002)……………………………..  5

*In Re: Levin*, 306 B.R. 158 (Bankr. D. Md., 2004)……………………………………..  9

*In Re: Manard-Hester*, 2009 WL 25001142 (Bankr. D. NE., 2009)……………………  11

*In Re: Morris*, 454 B.R. 660) (Bankr. N.D., Texas, 2011)……………………………….  12

*In Re: Munoz*, 287 B.R. 546 (9th Cir. BAP 2002)……………………………………….  6

*In Re: Ofra Corp. of Philadelphia*, 170 B.R. 257 (Bankr E.D. Pa., 1994)………………  5

*In Re: Reitter Corp.*, 499 B.R. 641, 4 (Bankr. P.R., 2011)……………………………….  6

*In Re: Service Merchandise Co., Inc.*, 256 B.R. 755 (Bankr. M.D. Tenn., 2000)……….  5

*In Re: Spong*, 661 F.2d 6 (2nd Cir.. 1981)…………………………………………….  10

*Levin v. Greco*, 415 B.R. 663, 667 (N.D. Ill., 2009)……………………………………..  11

*Loudoun Leasing Deve. Co. v. Ford Motor Credit Co.*, 128 F.3d 203,
   206 (4th Cir., 1997)…………………………………………………………………….  1

*Miller v. Gentry*, 55 F.3d 1487 (10th Cir. 1995)………………………………………..  10

*Petroff v. U.S.*, 2006 W.L. 18307, (Bankr. D. Md., 2006)……………………………….  4

*Silansky v. Brodsky*, Greeblatt, and Renehan (897 F.2d 743) (C.A. 4, 1990)…………… 10

*Stark v. Bishop*, 149 F.3d 1167 (4th Cir., 1998)…………………………………………….. 9

*Stuton v. Blaemire*, 229 B.R. 665 (Bankr. D. Md., 1999)…………………………………... 8

*Three Sisters Partners, L.L.C. v. Harden*, 167 F.3d 843, 847 (4th Cir., 1997)…………… 1

*Tully v. Cannonsburg Environmental Assoc.*, 72 F.3d 1260 (6th Cir., 1996)…………….. 5


**Statutes**:

11 U.S.C. §101 (14A)……………………………………………………………………… 10, 11

11 U.S.C. §507(a)(1)(A)…………………………………………………………………… 1, 8, 13

11 U.S.C. §507(a)(7) (Pre-BAPCPA)…………………………………………………….. 9, 10,11

11 U.S.C. §523(a)(5) (Pre-BAPCPA)…………………………………………………….. 10

11 U.S.C. §1322(a)(2)…………………………………………………………………….. 6, 8

Fed. R. Bankr. P. 3007……………………………………………………………………. 7

Fed. R. Bankr  P. 7001……………………………………………………………………. 4, 5

Md. Code, Family Law §1-202……………………………………………………………… 8

I.   **STATEMENT OF ISSUES & STANDARD OF REVIEW**

The issues before this Court are (i) whether the Bankruptcy Court erred in determining that Claim No. 3 filed by V. Peter Markuski, Jr., Esquire, constituted a Domestic Support Obligation and was entitled to priority status under 11 U.S.C. §507(a)(1)(A)[1], and (ii) whether it was harmless error for the Bankruptcy Court to determine the priority of a claim on a Motion objecting to the claim filed by the Debtor and not in an adversary proceeding.

When reviewing an appeal from the Bankruptcy Court, the Fourth Circuit has adopted the "clearly erroneous" standard for findings of fact and applied de novo review to conclusions of law. *Three Sisters Partners, L.L.C. v. Harden*, 167 F.3d 843, 847 (4th Cir. 199); *Loudoun Leasing Deve. Co. v. Ford Motor Credit Co.*, 128 F.3d 203, 206 (4th Cir. 1997).

II.   **STATEMENT OF THE CASE**

That on November 14, 2008, Sara McNeil filed for divorce against the Debtor, Michael Allan McNeil ("McNeil" or "Debtor"), in the Circuit Court for Howard County, Maryland, in Case No. 13-C-08-07524 (the "Domestic Litigation"). The Domestic Litigation involved contested issues relating to the custody, visitation, and support of Sara and Michael McNeil's two (2) minor children (the "Children"). V. Peter Markuski, Jr. ("Markuski"), an attorney with over thirty (30) years of experience in domestic law, was appointed by the Circuit Court as the Best Interest Attorney ("BIA") of the McNeils' two (2) minor children. The Court Order

---

[1] McNeil, throughout his Brief, incorrectly asserts the Bankruptcy Court made a determination that Markuski's claim was determined not to be dischargeable, however, the Court's determination that the claim was a priority domestic support obligation claim would have preclusive effect on the dischargeability of the debt. Many of the cases cited in this Brief address the issue of whether a claim for attorney's fees in a domestic case is a dischargeable debt under 11 U.S.C. §523, and provide authoritative precedent in adjudicating the priority of a claim since the statutory criteria for determining priority and dischrageability of a claim are the same.

1

appointing Markuski as BIA provided that the Debtor and his spouse were to pay the fees and costs of the BIA as apportioned by the Court as the case proceeded.  **(A.14, Ex.1)**[2]

The Domestic Litigation, which is still ongoing after over four (4) years, has been unusually contentious on matters involving the Children with the Debtor having filed over thirteen (13) motions to have Mrs. McNeil held in contempt on a myriad of issues involving the Children, including visitation, custody, and access to school and medical records (all denied), various motions relating to child support, and multiple motions to have both Markuski and the presiding Judge removed from the case.  **(A.22)**  Additionally, Mr. McNeil has appealed almost every ruling of the Circuit Court over the past four (4) years, all of which to date have been denied.  As BIA, Markuski was obligated to participate in all aspects of the Domestic Litigation that involved the Children, and was required to dedicate an inordinate amount of time attempting to support and protect the minor children's' interest.

Prior to the date the Debtor filed bankruptcy, May 10, 2012, (the "Petition Date") the Circuit Court for Howard County, Maryland, had ordered Mr. McNeil to pay Markuski $52,207.90 in BIA fees, representing the Court determined pro rata share of the total fees incurred by Markuski in representing the Children.  The award of fees were reduced to judgments, and as of the Petition Date, a balance of $47,936.81 remained unpaid, and which constituted the basis for Markuski's secured and priority Claim No. 3.  **(A.14, Ex. 2; A.52)**

Markuski also filed a second claim, Claim No. 4, in the amount of $18,102.53, also asserting priority status as a domestic support obligation.  **(A.53)**  Claim No. 4 included those fees claimed by Markuski in his capacity as BIA for work performed prior to the Petition Date,

---

[2] References to ("A.__") refers to the attachments to the Notice of Appeal transmitted by the Bankruptcy Court, and "Ex." refers to the number of the Exhibit attached to the pleading where the Exhibit was not transmitted as a separate attachment to the record.

but which had not been prorated and approved by the Circuit Court.  Claim No. 4 was filed as a contingent claim and entitled to priority as a domestic support obligation.[3]

The Debtor filed an objection to Markuski's Claim No. 3 asserting the claimed fees awarded in the Domestic Litigation were procured by fraud, did not constitute child support, was not a secured debt, along with various challenges to the Circuit Court's authority to award the fees.  **(A.19)**  Markuski filed a response to both McNeil's Objection **(A.20)** and an Opposition to the Confirmation of Plan, and on September 25, 2012, the Court held a hearing on Debtor's Objection, and the Confirmation of Debtor's Amended Chapter 13 Plan.  At the hearing on the Objection to Markuski's claim, Mr. McNeil attempted to challenge the underlying validity of the Circuit Court awards, and asserted that the Circuit Court judgments were not secured debts and did not constitute awards of child support and, therefore were not Domestic Support Obligations entitled to priority.  **(T.21)**[4]  At the hearing, both the Debtor and Markuski were provided ample opportunity to present evidence and argument, and the Court had before it all the pertinent Circuit Court Orders and Memorandum from the Domestic Litigation relating to Markuski's appointment as BIA and the award of fees to Markuski in his capacity as BIA.  **(A.14, A.52)**  The Court, from the Bench, overruled the Debtor's Objection and ruled that Markuski's claim constituted a Domestic Support Obligation and was secured to the extent the Debtor had an interest in certain real property located in Howard County, Maryland **(T.29)**, and subsequently an Order was entered consistent with the ruling from the Bench.  **(A.42)**

Debtor noted an Appeal of the Bankruptcy Court's Order Overruling his Objection to Claim No. 3 (Appx. I), however, in his Statement of Issues **(A.1)** and in his Brief filed in this

---

[3] The procedure in the Circuit court Domestic Litigation was that Mr. Markuski would periodically file petitions for fees for past services and the Court would allocate the fees between the Debtor and Mrs. McNeil.

[4] (T.__) references the page of the transcript of the September 25, 2012, hearing attached to the transmittal of the record as Attachment No. 4.

Appeal, only challenges the portion of the Bankruptcy Court's Order holding Markuski's Claim No. 3 constituted a priority Domestic Support Order, and does not challenge the portion of the Order determining the secured status of the claim. Furthermore, the Debtor did not file an appeal to the Court Order determining that Markuski's Claim No. 4 also constituted a Domestic Support Obligation entitled to priority. Accordingly, the only issue before this Court is the priority of Claim No. 3.

### III.   ARGUMENT

   A.   McNeil's Failure to File an Adversary Proceeding was Harmless Error.

McNeil, on appeal, asserts that the determination of the priority status of Markuski's claim was required to be adjudicated through an adversary proceeding under Fed. R. Bank P. 7001. Although, admittedly McNeil should have filed an adversary proceeding to contest the priority of Markuski's claim, he cannot now attempt to have this Court overrule an unfavorable ruling by asserting his own procedural error.

One of the underlying purposes of requiring certain matters relating to creditor's claims be brought by an adversary proceeding is to accord the creditor sufficient notice that it may be deprived of an interest in property. *Petroff v. U.S.*, 2006 W.L. 18307, (Bankr. D. Md., 2006), citing *Hamlet v. Ocwen Federal Bank*, 286 B.R. 835, 838 (Bank. W.D. Va., 2002). The heightened notice and service requirements of an adversary proceeding entitles a party to due process before an order binding the party will be afforded preclusive effect. *In Re: E-Z Serve Convenience Store*, 318 B.R. 631 (Bank. M.D. NC, 2004). In the instant case, the filing of an adversary proceeding would have been for Markuski's protection to ensure he was placed on notice that McNeil was attempting to challenge both the secured and priority status of the claim.

Markuski impliedly consented to McNeil's request to have the Court address both issues in the contested format of a motion objecting to the proof of claim.

The failure of an enumerated dispute set forth in Fed Bank R. 7001 to be filed as an Adversary Proceeding is not a jurisdictional defect, and parties can be deemed to have waived the requirement by failing to object, where no prejudice results, and parties were cognizant of and had opportunity to address issues decided by the court. *In Re: Kmart Corp.*, 290 B.R. 601 (Bankr. N.D. Ill., 2002). Courts, in determining whether the effect of a failure to initiate a matter in the form of an adversary proceeding is reversible error, have refused to elevate form over substance. Instead, the Courts look to whether the rights of the affected parties have been adequately presented and that no prejudice has arisen. *In Re: Ofra Corp. of Philadelphia*, 170 B.R. 257 (Bankr. E.D. Pa., 1994).

A party will not be deemed to have been prejudiced if in the alternate proceeding, he was afforded all the protections of an adversary proceeding, and litigated the issue before the Court or knowingly failed to litigate a Rule 7001 issue which he had an opportunity to litigate. In essence, the parties must be apprised of and have a chance to address all of the issues being decided by the Court. *In Re: Service Merchandise Co., Inc.*, 256 B.R. 755 (Bankr. M.D. Tenn. 2000). (*See, In Re:* Dides, 2006 WL 4667126 (Bankr. D. Md. 2006) – trustee's error of litigating a party's ownership interest by motion and not adversary proceeding was harmless error where all parties had adequate notice and fully participated in the litigation; *Tully v. Cannonsburg Environmental Assoc.*, 72 F.3d 1260 (6th Cir. 1996) – trustee's error in obtaining declaratory relief by motion and not adversary proceeding was harmless error since opposing party participated in proceeding and had full opportunity to litigate the issue; *In Re: Kmart, supra*, 290 B.R. 601 – issue of validity of a leasehold interest decided by motion and not adversary

5

proceeding was harmless error, the parties being cognizant of the issues and had the opportunity to be heard; *Trust Corp. v. Patterson*, 918 F.2d 1404, 1406-1407 (9th Cir. 1990) – failure to hold adversary proceeding to determine validity of security interest was not reversible error where Court held *de facto* adversarial hearing).

Furthermore, even if the lack of an adversary proceeding was procedurally incorrect, it would nonetheless be harmless error, if the record of an adversary proceeding likely would not have been different than the actual proceeding held by the Court. (*In Re: Munoz*, 287 B.R. 546 (9th Cir. BAP 2002); *In Re: Reitter Corp.*, 499 B.R. 641, 4 (Bankr. P.R., 2011). When the material facts are not in dispute, the Courts will disregard the procedural error, as long as the quality of the factual record or the presentations of argument would not have been materially different in an adversary proceeding.

In almost all of the above cited cases, the party who did <u>not</u> initially bring the matter before the Court in an adversary proceeding, was attempting to overturn the adverse ruling by claiming the procedure was defective. McNeil, however, was the party in this case who challenged the priority of the claims by a Motion Objecting to the Claims, and not in an adversary proceeding. McNeil is not now in a position to demand that the Court should have utilized a different procedural vehicle which he did not follow or utilize. McNeil's knew his Chapter 13 Plan could not be confirmed if Markuski's claims were accorded priority status since he would be required to pay the claim in full over the five (5) year life of the plan. 11 U.S.C. §1322(a)(2). Despite such knowledge, McNeil did not file an adversary proceeding to determine the priority of the claims during the over four (4) month period between the Petition Date of May 10, 2012, and September 25, 2012, the date of the hearing on the Confirmation of the Amended Plan. Instead, McNeil elected to have the Court decide the priority issue by Objection to the

Claim under Fed. R. Bankr. P. 3007, and Markuski did not oppose the procedure. The only issue relating to priority before the Court was whether Markuski's fees constituted a Domestic Support Obligation. Both parties were provided the full opportunity to raise all issues relating to the priority of the claims, to present evidence and arguments to the Court, and were accorded by the Court all the same rights they would have had in an adversary proceeding. Although McNeil did not like the Court's ruling, he was in no manner prejudiced by the procedure he instituted to determine the priority of the claims. Additionally, there were no critical facts in dispute, despite McNeil's protestations and accusations laid against Markuski at the hearing. The only relevant facts and which were not subject to collateral attack in the Bankruptcy case, were whether Markuski's claim arose from his appointment as BIA in the Domestic Litigation, and was McNeil ordered to pay those fees by the Circuit Court of Howard County, Maryland. Ample uncontested evidence as to both factors was before the Court at the hearing, and in ruling on the priority issue of the claim, the Court's only function was to apply those facts to the law.

      The record before the Bankruptcy Court in an adversary proceeding in this case would have been no different than the record before Judge Rice at the Objection hearing. The Bankruptcy Court had before it the Howard County Circuit Court Order appointing Mr. Markuski as the BIA, the awards of fees entered by the Circuit Court, and Circuit Court Orders and Memorandum explaining the functions served by Mr. Markuski on behalf of the Children. Regardless of the nature or how the proceeding was captioned, the only relevant evidence as to the priority of the claim was before the Bankruptcy Court on September 25, 2012. Although, Mr. McNeil, at the hearing, also attacked the Circuit Court Orders on the collateral issues of having been obtained fraudulently and as a result of a conspiracy with Mrs. McNeil. **(T.17, 20)**, the simple fact is that as of the date of the hearing, the Orders entered by the Circuit Court which

7

formed the basis for Claim No. 3 were valid and enforceable Orders entered by the Circuit Court for Howard County, Maryland. **(T. 29, 29)** In this case, the form of the proceeding would have had no impact on the substance and quality of the evidence before the Court.

In sum, McNeil, having implemented the procedure utilized by the Court, the lack of an adversary proceeding did not in any way affect the procedural rights of either party, prejudice either party, or in any manner could have affected the ultimate outcome of the case. Any assertion that the outcome of the case would have been different in an adversary proceeding is illusory, and the error was harmless.

### B. Markuski's Claim was a Priority Domestic Support Obligation

Markuski was appointed as BIA for the McNeil's two (2) minor children pursuant to Md. Code, Family Law, §1-202, which in part provides:

> (a) In an action in which custody, visitation rights, or the amount of support of a minor child is contested, the court may:
>
> (1)(ii) appoint a lawyer who shall serve as a best interest attorney to represent the minor child and who may not represent any party to the action; and
>
> (2) impose counsel fees against one or more parties to the action.

Claims falling within the 11 U.S.C. §101(14A) definition of a Domestic Support Obligation which are debts in the nature of support owed to or recoverable by a former spouse or child of the Debtor constitute priority claims under 11 U.S.C. §507(a)(1)(A), and must be paid in full under a debtor's Chapter 13 Plan. 11 U.S.C. §1322(a)(2). In *Stuton v. Blaemire*, 229 B.R. 665 (Bankr. D. Md., 1999), Judge Mannes of the U.S. Bankruptcy Court for the District of Maryland conducted an extensive analysis of whether fees due an attorney appointed under MD Code, Family Law §1-202, to represent a debtor's minor children constituted an award of support

8

to a child of the debtor.[5]  First, the Court, in *Blaemire*, analyzed the Maryland statute authorizing the appointment of a BIA, and determined the counsel's services were rendered for the child's benefit and support, which was in accord with the almost unanimous decisions of the majority of courts that had confronted the issue.  *See, Beaupied v. Chang*, 163 F.3d 1138, 140 (9th Cir. 1998); *In Re: Jones*, 9 F.3d 878, 880 (C.A. 10, 1993); *Holtz v. Poe*, 118 B.R. 809, 812 (Bankr. N.D., Okl., 1990).  The Court, in *Blaemire*, did not limit the fees awarded only to the BIA's duties relating to monetary support for the child, but also reasoned that protecting the child's interest on issues of visitation and custody related to the support of the minor child.  The ruling in *Blaemire* was revisited and adopted by Judge Derby of the U.S. Bankruptcy Court for the District of Maryland in the case of *In Re: Levin*, 306 B.R. 158 (Bankr. D. Md., 2004), which highlighted that an obligation in the "nature of child support" is to be interpreted and controlled by the purposes of the bankruptcy laws which looks at the character of the services performed, and not by labels imposed by state courts or statutes.  Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 11 U.S.C. §507(a)(7) provided priority for:

> …claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement. . .
>
> (A)  is assigned to another entity, voluntarily, by operation of law, or otherwise; or[6]

---

[5] Judge Mannes, in the opinion, notes that there is no Fourth Circuit cases on point, other than the unpublished decision of *Stark v. Bishop*, 149 F.3d 1167 (4th Cir. 1998), and as of this date the Fourth Circuit still has not opined on the issue in a published opinion, and the *Blaemire* decision has been routinely applied as controlling precedent by the U.S. Bankruptcy Court for the District of Maryland.  Judge Rice, in his Memorandum Denying Debtor's Motion to Reconsider his Order Overruling Objection to Claim No. 3, also noted the unpublished opinion of *Stark v. Bishop*. **(A.50 p.5)**

[6] The pre-BAPCPA exceptions to discharge under 11 U.S.C. §523(a)(5), relating to child and spousal support included the same criteria as the determination of priority.

A common thread throughout the pre-BAPCPA cases interpreting 11 U.S.C. §507(a)(7) is that the defendants inevitably argued that a debt owed to an attorney or guardian *ad litem* awarded in a domestic case did not constitute a "debt to a spouse or child of the debtor", which argument has been almost unanimously rejected. In rejecting the contention that such fees were not a debt owed "to" a spouse or child, the emphasis has been placed on whether the debt was in the nature of support; rather than on the identity of the payee. *See, Miller v. Gentry*, 55 F.3d 1487 (10th Cir., 1995); *In Re: Spong*, 661 F.2d 6 (2nd Cir., 1981); *Holtz v. Poe*, 118 B.R. 809, 812 (Bankr. N.D., 1990); *Dvorak v. Dvorak*, 986 F.2d 940 (5th Cir., 1993). Similarly, in *Blaemire, supra*, 229 B.R. 665, 667-668), Judge Mannes recognized that the fees due the BIA were not directly payable to a spouse or minor child, and that the debtor was not directly obligated to her minor children to pay the BIA's fees. Citing the Fourth Circuit case of *Silansky v. Brodsky*, Greenblatt, and Renehan (897 F.2d 743) (C.A. 4, 1990), which held fees payable to a former spouse's attorney were not dischargeable, Judge Mannes also found ample other precedent throughout the county in holding that the identity of the payee is not determinative of whether a debt is dischargeable. Simply, the Courts have refused to place form over substance, and have held that it is the nature of the debt that controls, and not the identity of the payee. *Miller, supra*, 55 F.3d 1487, 1490.

McNeil argues that the pre-BAPCPA case law is no longer applicable under the current Bankruptcy Code. Under the current Bankruptcy Code, a debt has priority if it falls within the definition of a Domestic Support Obligation ("DSO"), 11 U.S.C. §101(14A), which is defined as a "debt owed to or recoverable by a spouse, former spouse, or child of the debtor or such child's parent, guardian, or responsible relative … in the nature of alimony, maintenance, or support of … of such spouse, former spouse, or child of the debtor, without regard to whether such debt is

10

expressly so designated". McNeil appears to argue, that since a debt owed to attorneys in the nature of support is not expressly enumerated in §101(14A), such a debt is not a DSO. McNeil ignores that the pre-BAPCPA Bankruptcy Code 11 U.S.C. §507(a)(7), also did not enumerate attorneys as a designated payee entitled to priority, but nonetheless the Courts determined such fees were included in "claims to a spouse or child of the debtor for alimony, maintenance or support." In fact, the definition of DSO expressly recognized that it is the "nature of the support", and not how the debt is "designated" by the parties or the State Courts, that controls.

The majority of Courts post-BAPCPA that have analyzed the requirements of a DSO under the current Code, have held awards to attorneys for representing the interest of the minor children were in the nature of support and encompassed in the definition of DSO. In *Levin v. Greco*, 415 B.R. 663, 667 (N.D. Ill., 2009), the Court found the rationale of the pre-BAPCPA cases equally persuasive in holding that an attorney who is charged with representing the child's best interest in child custody proceedings, can be said to relate just as directly to the support of the child as attorney's fees incurred by the parents in a custody proceeding, and that the fees awarded the attorney were in the nature of child support and a non-dischargeable debt. The *Greco* Court, *Id.*, summarized that any other ruling would be putting form over substance in contravention of established bankruptcy law. (*See also: In Re: Manard-Hester*, 2009 WL 25001142 (Bankr. D. NE., 2009) – attorney fees awarded payable directly to the attorney in a contested paternity case held to be a DSO and not discharged; *In Re: Bunes* (Bankr. W.D. MO., 2009) – fees awarded directly to a guardian *ad litem*, not dischargeable even though the attorney was not one of the persons specifically listed in the definition of a DSO as qualifying as a payee; *In Re: Kassicieh*, 425 B.R. 467 (D.D. OH., 2010) – guardian *ad litem* fees not dischargeable). In the recent case of *In Re: Morris*, 454 B.R. 660) (Bankr. N.D., Texas, 2011), the Court recognized

that the majority of the Courts since the enactment of BAPCPA, have rejected the literal interpretation of a DSO as applicable to 11 U.S.C. §523(a)(1), and have included within the definition of a DSO, fees awarded directly to an attorney in a domestic litigation that are in the nature of support to a spouse or child.

The cases before and after the enactment of BAPCPA have recognized that BIAs and guardian *ad litems* play a crucial function in protecting the interests of minor children in family courts throughout this country, which is an inseparable element of the child's support. The Courts have also consistently held that a broad reading of what is meant by support is demanded by public policy. *Levin, supra*, 306 B.R. 158, 164. If BIA fees were dischargeable in bankruptcy, it would place a significant chill on those attorneys who are willing to represent minor children in domestic cases, many who accept the appointment at reduced rates. The instant case is illustrative of the manifest injustice that would occur if BIA fees are determined not to constitute a DSO. Mr. Markuski was appointed by the Court because the presiding Judge believed his expertise would be instrumental in representing the interests of the minor children. When Mr. Markuski accepted the appointment, there was no way he could predict the magnitude of the litigation that Mr. McNeil would thrust on the Court. Mr. McNeil became a virtual pleading factory, repeatedly requesting relief which had been denied numerous previous times, and then appealing most of the Court's ruling to the appellate courts.[7] Additionally, as the case progressed over the years, the issues with the minor children intensified and became more critical, and as of this date, there are a myriad of Motions pending before the Circuit Court,

---

[7] The Howard County Circuit Docket is over 74 pages long, and does not include the numerous Federal and State lawsuits McNeil has filed against Markuski, the presiding Judge, and almost everyone else involved in the Domestic Litigation. The Circuit Court at times has referred to many of the Motions filed by McNeil as "hastily initiated, in a reactive manner, baseless, and without substantial justification" (*see* **A.52 p. 32**).

including matters which have previously been reviewed and denied by the Maryland Court of Special Appeals.

Mr. Markuski believes he has an ethical duty to continue to represent the Children in the Domestic Litigation even though most of the fees awarded by the Court remain unpaid. Mr. Markuski has provided support to the Children in the broadest sense throughout the Domestic Litigation, and the fees owed Mr. Markuski are subject to priority under 11 U.S.C. §507(a)(1)(A).

**IV.** <u>**SUMMARY**</u>

For the reasons set forth herein, the ruling of the United States Bankruptcy Court overruling the Debtor's Objection to Claim No. 3 should be affirmed.

GOOZMAN, BERNSTEIN & MARKUSKI

<u>/s/Jeffrey W. Bernstein</u>
Jeffrey W. Bernstein, Esquire
9101 Cherry lane, Suite 207
Laurel, Maryland  20708
Attorney for Appellee
(301) 953-7480
jwbernstein@gbmlawfirm.com

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this **16th day of January, 2013,** a copy of the foregoing Appellee's Brief was mailed, U.S. First Class Postage Prepaid, to the following:

Michael A. McNeil
7014 Gentle Shade Road
Apartment 402
Columbia, MD  21046

Nancy Spencer Grigsby, Trustee
4201 Mitchellville Road, Suite 401
Bowie, MD  20716

U.S. Trustee Office
101 W. Lombard Street
Suite 2625
Baltimore, MD  21201

            */s/ Jeffrey W. Bernstein*
            Jeffrey W. Bernstein